# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN ACOSTA, | ) | Case No. 1:16CV1737 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

Plaintiff Carmen Acosta (hereinafter, "Acosta" or "claimant") challenges the final decision of Defendant Commissioner of Social Security (hereinafter, "Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

# I. PROCEDURAL HISTORY

On April 2, 2013, Acosta protectively filed an application for SSI benefits[1]. (R. 14, PageID #: 336, 316, 97.) She stated that her disability began on January 1, 2006. (R. 14, PageID #: 336,316.) Acosta listed her physical or mental conditions that limit her ability to work as: "Kidney stones, anxiety, depression, high blood pressure." (R. 14, PageID #: 340, 231.)

Acosta's applications were denied initially and upon reconsideration. (R. 14, PageID #: 230-241, 242-254.) Thereafter, she filed a written request for a hearing before an administrative law judge ("ALJ"). (R. 14, PageID #: 274.). An ALJ convened a hearing on April 16, 2015, to hear Acosta's case. (R. 14, PageID #: 118-141.) Acosta appeared at the hearing, was represented by counsel, and testified. (R. 14, PageID #: 118-119.) A vocational expert ("VE") attended the hearing and provided testimony. (R. 14, PageID #: 118, 137-140.)

On June 26, 2015, the ALJ issued her decision, applying the standard five-step sequential analysis, and determined that Acosta was not disabled. (R. 14, PageID #: 97-109; *see generally* 20 C.F.R. § 416.920(a).) The Appeals Council denied Acosta's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 14, PageID #: 72-74.) Acosta now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

In her brief, Acosta identifies one general alleged error—the ALJ ignored substantial evidence and failed to fully evaluate the medical record involving all of Plaintiff's impairments,

---

[1] Acosta had filed a previous claim in December 2009, which resulted in a January 2012 decision finding Acosta not disabled. (R. 14, PageID #: 97, 204-281.)

medications, and opinion evidence, which supported further Residual Functional Capacity

("RFC") restrictions—but the court identifies several additional issues argued in her narrative:

> [1.] The ALJ's decision "does not fully take into consideration the limitations caused by kidney stones, 'status post thyroidectomy' relating to Plaintiff's history of hyperparathyroidism, and Adjustment Disorder, despite finding them to be severe impairments," thus the ALJ's RFC is not supported by substantial evidence.

> [2.] The ALJ "failed to consider the purpose, effect, and impact of the medications used by Plaintiff on her functioning," thus the ALJ's RFC is not supported by substantial evidence.

> [3.] The ALJ found Acosta had moderate difficulty in maintaining concentration, persistence, or pace, but failed to include the limitations of such in the RFC.

(R. 16, PageID #: 797, 804.)

## II. PERSONAL BACKGROUND INFORMATION

Acosta was born on March 7, 1974, and was 39 years old as of the application date. (R.

14, PageID #: 336, 316, 231.) Accordingly, Acosta was considered a "younger person" for Social

Security purposes. *See* 20 C.F.R. § 404.1563(c). Acosta completed eleventh grade, and is not

able to communicate in English. (R. 14, PageID #: 339, 341, 125, 130.)

A.  Treatment Records

Disputed issues will be discussed as they arise in Acosta's brief alleging errors by the ALJ. Acosta applied for SSI benefits on April 2, 2013. (R. 14, PageID #: 336, 316, 97.) She listed her physical or mental conditions that limit her ability to work as:  "Kidney stones, anxiety, depression, high blood pressure." (R. 14, PageID #: 340.) The ALJ found that these were new medical conditions since the previous decision. (R. 14, PageID #: 98.)

On January 18, 2012, after the previous ALJ decision, Acosta was diagnosed with hyperparathyroidism, due to elevated parathyroid hormone levels. (R. 14, PageID #: 634-635; *see also* PageID #: 604-605.) She was treated by Allan Siperstein, M.D., an endocrinologist, who noted longstanding elevated calcium levels and a history of multiple kidney stones. Dr. Siperstein performed an ultrasound exam, which demonstrated a thyroid gland of normal size, but also found suggestions of an enlarged left lower parathyroid. (R. 14, PageID #: 604.) He suggested a parathyroid exploration, which was performed on February 28, 2012. (R. 14, PageID #: 605, 626-628.) The surgery discovered, and excised, an ectopic supernumerary left upper parathyroid gland. The remaining four glands were found to be normal. (R. 14, PageID #: 626-627.)

At a follow-up appointment with Dr. Siperstein on October 21, 2013, Acosta appeared well. Her incision had healed well, and the doctor indicated no further surgical follow-up was required. (R. 14, PageID #: 622-623.)

---

[2] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties *and* also deemed relevant by the court to the assignment of error raised.

Acosta has a history of renal complications, which led to her hospitalization from August 31, 2012, through September 6, 2012, for an acute onset of left flank pain. (R. 14, PageID #: 418, 437, 545-546.) She had a CT scan done in the ER which revealed a new stone in her left kidney, her only functioning kidney. She had an acute kidney injury, secondary to the obstruction from the stone. (R. 14, PageID #: 437.)

Acosta was treated by Keith Petras, M.D., from September 2009 to October 2012. On October 3, 2012, Dr. Petras noted that Acosta had an adenoma removed that February, and she had a parenchymal stone. Dr. Petras noted that a stent, which had been placed on her left side, led to no significant improvement and was scheduled to be removed. (R. 14, PageID #: 512; *see also* PageID #: 542 (stent removed).) He diagnosed her with recurrent nephrolithiasis (kidney stones). (R. 14, PageID #: 512.)

Acosta treated with Sudhir Oza, M.D., from February 2011 through June 2013, for renal insufficiency and other issues. (R. 14, PageID #: 532-555.) Dr. Oza examined Acosta on September 11, 2012, after her recent discharge from the hospital. Acosta had been experiencing some nausea, vomiting, and abdominal pain several days earlier, but her pain had improved, and vomiting ceased, by the appointment date. Upon examination, Acosta had no loin tenderness or abdominal tenderness. (R. 14, PageID #: 543-544.) At a February 7, 2013, visit with Dr. Oza, Acosta stated she was doing "reasonably well" at the time. (R. 14, PageID #: 541.)

A renal sonogram was performed on June 3, 2013, which revealed moderate hydronephrosis[3] in the right kidney. (R. 14, PageID #: 548.)

---

[3] Hydronephrosis is swelling of a kidney due to a build-up of urine.

Acosta was hospitalized again in February 2015 for right flank pain. (R. 14, PageID #: 693-701.) She reported that before that admission, she had been independent with all activities. (R. 14, PageID #: 715.) On her February 24, 2015 admission date, Acosta denied any nausea or vomiting, and denied any frequency, urgency, or blood in the urine, although she complained of right flank pain. (R. 14, PageID #: 702.) A CT scan showed severe right hydroureteronephrosis, compared to August 2012, and a right distal ureteral stone. (R. 14, PageID #: 703, 698.)

On February 26, 2015, a final report from the hospital noted that a diuretic renal scan showed satisfactory flow, function, and drainage in the left kidney, although there was no significant uptake or function in the right. (R. 14, PageID #: 673.) That day, Acosta reported to Jeffrey Lapeyrolerie, M.D., a urologist, that she was feeling well, denying any abdominal pain, flank pain, dysuria (pain or discomfort upon urination), frequency, nausea, or vomiting. (R. 14, PageID #: 704.) Dr. Lapeyrolerie assessed claimant with a nonfunctioning right kidney, lower urinary tract infection, and a history of urolithiasis (kidney stone disease). The doctor stated the abdominal pain had resolved, which may have been related to the UTI, but probably was coincidental. (R. 14, PageID #: 705.)

The record indicates that Acosta has a history of anxiety and depression. (R. 14, PageID #: 537.) During an April 1, 2013 visit with Dr. Oza, Acosta reported that her depression and anxiety were doing better. (R. 14, PageID #: 539.) She also advised Dr. Oza that her depression was better, during an appointment on November 8, 2013. (R. 14, PageID #: 643.)

At the April 2015 hearing, Acosta testified that she had gained a lot of weight after her thyroid surgery, which may be related to her medications, and that she was very fatigued. (R. 14, PageID #: 128.) She testified that she had continuous pain from kidney stones. (R. 14, PageID #:

131.) Acosta further testified that she was unable to work because she had to drink a bottle of water every hour, and she needed to use the restroom every three to five minutes. (R. 14, PageID #: 127.) Later, she testified that she had to go to the restroom very often, because if she held her urine, it caused a lot of pain. (R. 14, PageID #: 132.) Acosta said she might have to go every fifteen minutes, depending on how much water she drank. (R. 14, PageID #: 133.) Also, she testified, if the pain is really bad, then usually she lays down. (R. 14, PageID #: 127.)


B.  Medical Opinions Concerning Claimant's Functional Limitations

Evelyn R. Rivera, Ph.D., performed a consultative psychological exam on Acosta on August 27, 2013. (R. 14, PageID #: 596-599.) Dr. Rivera said that Acosta had moderate symptoms of anxiety and depression, and claimant reported that she gets more anxious as her health worsens. (R. 14, PageID #: 597-598.) Dr. Rivera reported that Acosta did not demonstrate any limitations in the area of attention and concentration. She opined that Acosta's low energy, anxiety, and difficulty managing her health problems may make it difficult for her to respond to work pressures. (R. 14, PageID #: 599.)

Denise Rabold, Ph.D., an agency psychological consultant, reviewed claimant's file on September 6, 2013. Dr. Rabold found that Acosta had mild limitations in restrictions of daily living; moderate difficulties in maintaining social functioning, and maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (R. 14, PageID #: 237.) On reconsideration, January 9, 2014, Eric Goldsmith, Ph.D., affirmed that opinion. (R. 14, PageID #: 252-253.)

Venkatachala Sreenivas, M.D., an agency medical consultant, reviewed claimant's medical records on September 26, 2013. Dr. Sreenivas adopted the previous ALJ decision under Acquiescence Rule 98-4 (Drummond[4] Ruling). Acosta, according to Dr. Sreenivas, has the RFC to perform light work, subject to unskilled work that does not require frequent interaction, public contact, or the need to speak English. (R. 14, PageID #: 238-239.) Gary Hinzman, M.D., affirmed that opinion, upon reconsideration dated January 13, 2014. (R. 14, PageID #: 252.)

## IV.     TESTIMONY OF VOCATIONAL EXPERT

A vocational expert attended Acosta's hearing and testified. (R. 14, PageID #: 137-140.) The ALJ stated that Acosta had no past relevant work. (R. 14, PageID #: 138.) The ALJ posed a hypothetical question concerning an individual of Acosta's age, education, and literacy issues— limited English language skills. The hypothetical person can work at a range of unskilled light work, simple tasks, avoid concentrated exposure to humidity and wetness, extremes of hot and cold and pulmonary irritants, and no direct contact with the public that would require her to communicate in English. (R. 14, PageID #: 138.) The VE testified that, within those limitations, there would be a number of light work positions, SVP 2. The first example given was housekeeping/cleaner, DOT number 323.687-014, but the VE reduced the available jobs by half because there is occasional contact with the public in some of the jobs. As such, the VE testified there would be approximately 1,000 jobs in the local economy, in Ohio approximately 20,000, and nationally about 300,000. (R. 14, PageID #: 138.)

---

[4] *See Drummond v. Commissioner, 126 F.3d 837, 842 (6th Cir. 1997).*

The VE identified a second job, garment folder, also light, SVP 2, DOT number 789.687-066. There would be approximately 500 jobs locally, in Ohio approximately 5,000, and 140,000 nationally. A third example, again light, SVP 2, would be production assembler, DOT number 706.687-010. There would be approximately 15,000 jobs in the local economy, 20,000 in Ohio, and 200,000 nationally. (R. 14, PageID #: 139.)  The VE confirmed that the testimony was consistent with the DOT. (*Id.*)

The ALJ then modified the hypothetical to an individual who would be off-task more than twenty percent, or miss more than two days per month. The ALJ asked whether such a person would be able to maintain full-time employment. The VE responded that the hypothetical person would not be able to maintain full-time employment. (R. 14, PageID #: 139.)

## V.    ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her June 26, 2015, decision:

1.  The claimant has not engaged in substantial gainful activity since April 2, 2013, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: history of kidney stones; status post thyroidectomy; asthma; adjustment disorder with anxiety and depression; and obesity (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except:  She has additional literacy issues with the additional language basically limited skills with English and her primary language is

Spanish. She can perform unskilled work. She should avoid concentrated exposure to humidity and wetness, extremes of hot and cold, and pulmonary irritants. She can perform simple tasks. She should have no direct contact with the public that requires English proficiency. She can be shown work by demonstration or in Spanish.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 7, 1974, and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 2, 2013, the date the application was filed (20 CFR 416.920(g)).

(R. 14, PageID #: 100, 102-103, 107-109.)

VI.     DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when she establishes disability within

the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered

disabled when she cannot perform "substantial gainful employment by reason of any medically

determinable physical or mental impairment that can be expected to result in death or that has

lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20

C.F.R. § 416.905(a)

10

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id*. § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id*. § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

VII.     STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human*

*Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record when making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VIII.    ANALYSIS

Acosta raises a single alleged assignment of error, arguing that the ALJ ignored substantial evidence and failed to fully evaluate the medical record involving all of Plaintiff's impairments, medications, and opinion evidence, which supported further RFC restrictions. In developing this error, Acosta's brief raises several issues for review:

> [1.] The ALJ's decision "does not fully take into consideration the limitations caused by kidney stones, 'status post thyroidectomy' relating to Plaintiff's history of hyperparathyroidism, and Adjustment Disorder, despite finding them to be

severe impairments," thus the ALJ's RFC is not supported by substantial evidence.

[2.] The ALJ "failed to consider the purpose, effect, and impact of the medications used by Plaintiff on her functioning," thus the ALJ's RFC is not supported by substantial evidence.

[3.] The ALJ found Acosta had moderate difficulty in maintaining concentration, persistence, or pace, but failed to include the limitations of such in the RFC.

(R. 16, PageID #: 797, 804.)

A. Limitations Caused by Kidney Stones, Hyperparathyroidism, and Other Symptoms

Acosta argues that she had "continuing and consistent complaints of abdominal and flank pain, fatigue, swelling, nausea, vomiting, and frequent, painful urination, little of which the ALJ discussed in her decision." (R. 16, PageID #: 797.) She contends that the ALJ failed to properly evaluate these symptoms. In support of this argument, Acosta claims the ALJ's decision simply referred to diagnostic studies that do not provide insight into the impairments, or referred only to office visits at which the claimant was doing well. (R. 16, PageID #: 797-798.) Although Acosta concedes that the ALJ discussed her hospitalization for kidney stones, she contends the ALJ "did not discuss whether this severe impairment imposed any functional limitations," and further asserts that the evidence of limitations was "much greater than mentioned or reviewed." (R. 16, PageID #: 798.) Acosta, however, does not cite to record evidence supporting this asserted evidence of limitations.

It is the claimant's burden to prove that she is disabled within the meaning of the Act, and to establish that her impairments render her unable to engage in any substantial gainful activity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Hubbard*, 2012 WL 883612, at *5 (quoting *Jones v. Commissioner*, 336 F.3d

469, 474 (6th Cir. 2003)); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). Ultimately, the claimant bears the burden of proving her entitlement to benefits. *Hubbard*, 2012 WL 883612, at *5 (quoting *Boyes v. Secretary, HHS*, 46 F.3d 510, 512 (6th Cir. 1994).) The presence or diagnosis of an impairment, alone, is not sufficient to support a disability determination, but there must be some evidence of the resulting limitation(s). The mere diagnosis of a condition, for example, does not establish either the condition's severity or, more importantly, its effect on the claimant's functional limitations. *Kennedy v. Astrue*, No. 06-6582, 2007 WL 2669153, at *6 (6th Cir. Sept. 7, 2007); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (doctor's reports silent on any limitation resulting from diagnosed arthritis).

A reading of the ALJ's decision reveals that the ALJ's review of the medical record was more thorough than claimant asserts. *See generally* R. 14, PageID #: 103-106. The ALJ, in addition to discussing Acosta's hearing testimony regarding her symptoms (as well as her 2012 and 2015 hospitalizations), also identified numerous visits to treating physicians. (R. 14, PageID #: 104-106.) Moreover, although Acosta contends that, for example, "evidence of limitations related to [her] recurrent kidney stones and hyperparathyroidism were much greater than mentioned or reviewed," she does not identify any medical opinion evidence supporting any such limitations. *See generally* R. 16, PageID #: 798. Similarly, Acosta argues that, although the ALJ referenced the surgically-placed stent intended to relieve a blockage and ensure urine drainage from the bladder, the ALJ gave no thought to any limitations that might arise after the procedure failed to relieve her abdominal and flank pain. (R. 16, PageID #: 799.) Again, however, Acosta did not identify any medical opinion evidence of any such limitations.

Acosta states that she has many symptoms typically associated with kidney stones and hyperparathryoidism.  (R. 16, PageID #: 799.)  She argues that there is evidence in the record of her inability to lift heavy objects due to flank pain, inability to stand for long periods due to leg swelling and fatigue, shortness of breath and palpitations, and her frequent use of the restroom. (R. 16, PageID #: 800, citing to record.)  She claims that the ALJ "gave no consideration to these symptoms or how they may be related to Plaintiff's severe impairments, which necessarily impact" her ability to perform basic work activities.  *Id.*

The ALJ stated that she had considered all of Acosta's symptoms.  (R. 14, PageID #: 103.)  For example, the ALJ specifically mentioned Acosta's report that she could not lift heavy items.  *Id.*  She discussed Acosta's need to drink water frequently, and the resulting need for a bathroom break.  *Id.* at 104.  The ALJ noted Acosta's hospitalization for acute left flank pain.  *Id.*

The ALJ found that claimant's renal insufficiency was a non-severe impairment which does not impose more than minimal limitations in her ability to perform basic work activities. (R. 14, PageID #: 100.) The ALJ pointed out that no treating or examining physician had indicated findings that would satisfy the severity requirements of any listed impairment. (R. 14, PageID #: 100-101.) The ALJ pointed out that no treating source opinions had been provided.  *Id.* at 107. As discussed above, Acosta does not identify any opinion evidence supporting more restrictive functional limitations arising from her kidney ailments.

The Commissioner's determination must stand if it is supported by substantial evidence, regardless of whether substantial evidence could support the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. The court finds that the decision of the ALJ on this issue is supported by substantial evidence.

B.  Limitations Caused by Effect of Medications

Acosta also contends that the ALJ "failed to consider the purpose, effect, and impact of the medications used by Plaintiff on her functioning." (R. 16, PageID #: 802-803.) She argues that side effects affecting a claimant's ability to work should be evaluated in the RFC, or at least mentioned in the ALJ's decision. (R. 16, PageID #: 802.) Acosta notes that she has been prescribed numerous medications—such as Oxycodone, Tylenol #3, and morphine—which she states supports her allegations of severe pain. Also, these medications have known side effects of drowsiness, excessive tiredness, and frequent urination, which Acosta states "are precisely the symptoms Plaintiff repeatedly reported." (R. 16, PageID #: 803.)

Acosta states that she was consistently using a diuretic, Maxzide (R. 16, PageID #: 802, citing R. 14, PageID #: 576, 647, 690-691), which has a known side effect of frequent urination. She testified that she needed to use the bathroom very often, approximately every fifteen minutes or urination would be painful.[5] (R. 16, PageID #: 802, citing R. 14, PageID #: 132-133; *see also* PageID #: 358, 606.)

Where there is evidence that a claimant requires access to a bathroom as needed, the ALJ's RFC assessment should address the alleged limitation. *Hooks v. Commissioner*, No. 3:13CV454, 2014 WL 4348182, at *7 (E.D. Tenn. Sept. 2, 2014). In *McNelis v. Commissioner*, No. 08-12529, 2009 WL 3210713 (E.D. Mich Sept. 29, 2009), the claimant raised the argument that side effects of medication must be considered in an ALJ's determination of the RFC. The court in that case found that the ALJ had not sufficiently supported his credibility finding

---

[5] More accurately, Acosta testified that "if I hold my urine," that was painful. (R. 14, PageID #: 132.) She did not testify to pain when urinating. (R. 14, PageID #: 133-134; *see also* PageID #: 537 (no dysuria).)

concerning the claimant's bathroom break allegations. *McNelis*, 2009 WL 3210713, at *6. The issue of bathroom breaks was also addressed in *Hubbard*, where the court addressed the ALJ's conclusion that the claimant's subjective statements about the severity of his diarrhea were not fully credible. In that case, the court noted that the treating physician's opinion was not specific about what functional limitations and restrictions the claimant might require. *Hubbard*, 2012 WL 883612, at *7. These cases do not support the claimant's argument.

Here, Acosta points to no evidence that any treating source identified any functional limitations or restrictions on this issue. Although Acosta does not point to any medical opinion stating that she requires frequent bathroom breaks, she would have the court infer that limitation, based solely on her hearing testimony and the medications she takes. (R. 16, PageID #: 801-803.)

Acosta contends that the ALJ's credibility determination misrepresented her testimony at the hearing that she needed to use a bathroom frequently. Acosta points to the ALJ's comment that she did not need to use the bathroom during the hour-long hearing. (R. 16, PageID #: 801.) However, the ALJ did not rely solely upon that information. Rather, the ALJ's decision indicates she also relied on "the preponderance of the medical evidence of record" in finding that claimant was not precluded from all employment. (R. 14, PageID #: 107.)

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). The ALJ is not required to accept the claimant's subjective complaints, and may properly consider the claimant's credibility. *Jones*, 336 F.3d at 476 (citing *Walters*, 127 F.3d at 531). An ALJ need not

accept a claimant's allegations where the testimony is not supported by the record. *McNelis*, 2009 WL 3210713, at *6.

The court may examine all the evidence in the record, regardless of whether such evidence was cited by the Commissioner. *Walker*, 884 F.2d at 245; *Hubbard*, 2012 WL 883612, at *5 (quoting *Heston*, 245 F.3d at 535). Although the medical record indicates that the claimant was using Maxzide, she did not report any problem of frequent urination at the most of the appointments she cites. *See* R. 16, PageID #: 802. At a February 27, 2012, visit with Dr. Siperstein for evaluation of her hyperparathyroidism, the claimant reported that she "urinates frequently due to drinking a large amount of water." (R. 14, PageID #: 606, 603-604.) At subsequent medical appointments, however, frequent urination was not identified as an issue. At her March 27, 2012, appointment with Dr. Oza, the report for GU (genitourinary) was: "Negative for urgency, frequency or incontinence." (R. 14, PageID #: 575.) At a May 13, 2013 appointment, Dr. Oza noted "GU: No dysuria or frequency." (R. 14, PageID #: 537.) At her April 1, 2014, appointment with Dr. Oza, the report was "GU: Negative for urgency, frequency or incontinence." (R. 14, PageID #: 646.) *See also* R. 14, PageID #: 702, 704 (no frequency or urgency in February 2015). Although there was no medical finding to this effect, the frequency of urination appears to be, as stated by Acosta, more related to her water intake, rather than an unavoidable side effect of the medication Maxzide. *See generally* R. 14, PageID #: 133 ("depends how much water I drink); PageID #: 606 ("urinates frequently due to drinking a large amount of water.").

In any event, Acosta points to no medical opinion stating that she requires frequent bathroom breaks, or any evidence setting out any functional limitations or restrictions on this

issue. *See* R. 16, PageID #: 801-803. Her statements at the hearing were contradicted by the statements she provided to Dr. Oza and others. Likewise, the claimant points to no evidence supporting a functional limitation based on "drowsiness" or "excessive tiredness" allegedly caused by her medications. *See* R. 16, PageID #: 803.

The court finds that the decision of the ALJ on this issue is supported by substantial evidence. *See generally McNelis*, 2009 WL 3210713, at *6 (ALJ need not accept claimant's allegations where testimony is not supported by record).

### C.  Limitations on Maintaining Concentration, Persistence, or Pace

Acosta also argues that the ALJ found she had moderate difficulties in maintaining concentration, persistence, or pace, but failed to include limitations of same in the RFC. (R. 16, PageID #: 804.)

Social Security regulations require an ALJ to consider the findings of a state agency psychological consultant and, unless the claimant's treating source is given controlling weight, explain the weight given to the consultant. 20 C.F.R. 416.927. Where there are conflicting opinions resulting from essentially the same medical data, it is the responsibility of the ALJ to resolve those conflicts. *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC).

The ALJ gave "great weight" to the agency consultants' opinion that the claimant had moderate difficulties in maintaining concentration, persistence or pace, as it was consistent with the record evidence. (R. 14, PageID #: 102, 107.) At the same time, the ALJ gave "weight" to consultative examiner Dr. Rivera's opinion (which, *inter alia*, stated that Acosta did not appear

to demonstrate any limitations in the area of attention and concentration), to the extent that it persuaded the ALJ that claimant's RFC did not require greater restrictions than set forth in the decision. (R. 14, PageID #: 106.) The RFC provided that Acosta can perform light work and simple tasks. (R. 14, PageID #: 102.)

Acosta argues that, under *Ealy v. Commissioner*, restricting Acosta to work that is simple, routine and repetitive does not necessarily address all of her mental limitations, particularly those that are stress related. (R. 16, PageID #: 806, citing *Ealy v. Commissioner*, 594 F.3d 504, 516 (6th Cir. 2010).) She notes that Dr. Rivera opined that Acosta's low energy, anxiety, and difficulty managing her health problems may make it difficult to respond to work pressures. (R. 16, PageID #: 805, citing PageID #: 599.) In *Ealy*, a state agency psychological consultant opined that the claimant retained the mental ability to understand and remember simple instructions; to sustain attention to complete simple repetitive tasks for two-hour segments during a workday, where speed was not critical; and to adapt to routine changes in a simple work setting. *Id.* at 509. The court noted that the ALJ's hypothetical omitted the speed- and pace-based restrictions entirely, and should have included the restriction to two-hour segments, and that speed could not be critical to his job. Thus, the court found that the claimant's limitations were not fully conveyed to the vocational expert. *Id.* at 516. *Ealy*, however, does not stand for a broader proposition that the Sixth Circuit has refused to accept a limitation of simple work as a sufficient incorporation of a claimant's moderate deficiencies in concentration, persistence, or pace.

Acosta recognizes that *Ealy* does not require further limitations beyond limiting a claimant to "simple, repetitive tasks" for those persons with moderate difficulties in

concentration, persistence, or pace. (R. 16, PageID #: 804, citing *Jackson v. Commissioner*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011).*) She encourages the court, however, to undertake a "fact-based approach" to whether specific additional limitations are required in such a case. *Id.* Turning to the facts Acosta offers in this regard, the psychological consultants stated that Acosta is worried about the status of her remaining kidney, although she does not appear in imminent danger of losing the kidney (or going on dialysis). The consultants found her allegations of anxiety due to her health problems to be credible. (R. 16, PageID #: 807, citing R. 14, PageID #: 238, 251.) Acosta contends that the record reflects consistent anxiety about her health, which increases as her symptoms increase. (R. 16, PageID #: 807, citing record.) The claimant argues that the ALJ did not adequately discuss these allegations, and thus the RFC does not adequately account for claimant's mental limitations.

The court finds that the ALJ's decision reflects a balanced consideration of both the opinions of the psychological consultants as well as Dr. Rivera. While giving great weight to the opinions of the psychological consultants finding that claimant has moderate deficiencies in concentration, persistence, or pace, the ALJ accommodated those deficiencies by limiting her to light work and simple tasks. The ALJ also gave "weight" to the examining consultant Dr. Rivera's opinion as support for finding that claimant's RFC did not require greater restrictions than that. (R. 14, PageID #: 106.)

The ALJ's RFC findings reasonably accommodated Acosta's medically determinable physical and mental impairments by limiting her to a range of unskilled light work. The Commissioner's determination must stand if it is supported by substantial evidence, regardless of whether substantial evidence could support another conclusion. *Bass*, 499 F.3d at 509; *Mullen,*

[800 F.2d at 545](). The court finds that the decision of the ALJ on this issue is supported by substantial evidence.

## IX.    CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence. The record evidence, as discussed in the ALJ's decision, is such that "a reasonable mind might accept [it] as adequate" support for the Commissioner's final benefits determination. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401). The Magistrate Judge, therefore, recommends that the decision of the Commissioner be **AFFIRMED**.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:    June 16, 2017

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).